1
2
3
4
5
6
7
8                   **IN THE UNITED STATES DISTRICT COURT**
9                 **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11   SEVERINO L. ESTILLORE, JR.,              CASE NO. CV F 10-1243 LJO GSA
12                 Plaintiff,                 **DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS**
13         vs.                                (Doc. 19.)
14   COUNTRYWIDE BANK FSB, et al.,
15                 Defendants.
16   _____/
17                              **INTRODUCTION**
18        Defendants Countrywide Bank FSB ("Countrywide"), ReconTrust Company, N.A.
19   ("ReconTrust"), and Mortgage Electronic Registration Systems, Inc. ("MERS") seek to dismiss as
20   insufficiently pled and legally barred pro se plaintiff Severino Estillore, Jr.'s ("Mr. Estillore's") claims
21   arising from his defaulted home loans.  This Court considered Countrywide, ReconTrust and MERS'
22   (collectively the "lender defendants'") F.R.Civ.P. 12(b)(6) motion to dismiss on the record and
23   VACATES the March 3, 2011 hearing, pursuant to Local Rule 230(g).  For the reasons discussed below,
24   this Court DISMISSES this action.
25                              **BACKGROUND**
26                          **Mr. Estillore's Loans**
27        On May 2, 2007, Mr. Estillore obtained from Countrywide $458,400 and $57,300 loans secured
28   by deeds of trust on his Fresno residential property ("property").  The deeds of trust identified Mr.

                                        1

Estillore as borrower, Countrywide as lender, ReconTrust as trustee, and MERS as beneficiary.  Mr. Estillore's operative complaint ("complaint") identifies the $458,400 loan as a 40-year monthly adjustable rate mortgage and the $57,300 loan as fixed rate with a balloon payment in 15 years.  Mr. Estillore defaulted on the loans, and the property is subject to non-judicial foreclosure.

### Mr. Estillore's Claims

On July 12, 2010, Mr. Estillore filed his 34-page complaint to allege 18 claims under federal and California statues and common law.  The complaint's gist is that Mr. Estillore obtained loans for which he was unqualified and could not afford.  The complaint seeks a variety of damages and declaratory and injunctive relief that the property is not subject to non-judicial foreclosure.

### DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The lender defendants seek to dismiss the complaint's claims as incognizable, insufficiently pled and time barred.

"A trial court may dismiss a claim sua sponte under Fed.R.Civ.P. 12(b)(6). . . . Such dismissal may be made without notice where the claimant cannot possibly win relief."  *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see Wong v. Bell*, 642 F.2d 359, 361-362 (9th Cir. 1981).  Sua sponte dismissal may be made before process is served on defendants.  *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (dismissals under 28 U.S.C. § 1915(d) are often made sua sponte); *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (court may dismiss frivolous in forma pauperis action sua sponte prior to service of process on defendants).

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

1    In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

2    the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

3    can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

4    F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

5    are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

6    *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

7    assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

8    *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must  not "assume that the [plaintiff] can

9    prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not

10   been alleged." *Associated General Contractors of California, Inc. v. California State Council of*

11   *Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if

12   "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon*

13   *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

14   A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

15   labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell*

16   *Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted).

17   Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to

18   plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

19   *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

20   direct or inferential allegations respecting all the material elements necessary to sustain recovery under

21   some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v.*

22   *Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

23   In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court recently

24   explained:

25            . . . a complaint must contain sufficient factual matter, accepted as true, to "state
          a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the
26        plaintiff pleads factual content that allows the court to draw the reasonable inference that
          the defendant is liable for the misconduct alleged. . . . The plausibility standard is not
27        akin to a "probability requirement," but it asks for more than a sheer possibility that a
          defendant has acted unlawfully.  (Citations omitted.)

28

3

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

Moreover, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682. If the limitations defense does not appear on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to

4

the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[1] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp*., 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd*., 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may take judicial notice of matters of public record outside the pleadings'" and consider them for purposes of the motion to dismiss. *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

As discussed below, the complaint is subject to dismissal in the absence of claims supported by a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. In addition, the complaint's claims are susceptible to defenses.

## **Failure To Satisfy F.R.Civ.P. 8**

The lender defendants seek to dismiss the complaint in its entirety given its failure "to comply with basic pleading requirements demanded of all litigants under the Federal Rules of Civil Procedure." The lender defendants are correct. The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

---

[1]      "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, __ U.S. __, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The complaint fails to satisfy F.R.Civ.P. 8. The complaint fails to distinguish alleged wrongdoing of the lender defendants and the complaint's other defendants First Mutual Mortgage, Inc. ("First Mutual Mortgage") and Financial Title Co. ("Financial Title"). The lender defendants are correct that the complaint makes "generalized pronouncements that lack particularized factual detail." The complaint rests on a sprinkling of references, including "predatory lending practices," "excessive fees," "payment penalties," "negative amortization payments," "abusive terms," "acts of deception," and

"illegal loan." The complaint focuses on origination of Mr. Estillore's loans but fails to allege facts that ReconTrust or MERS were involved in loan origination. The complaint lacks facts of the lender defendants' purported wrongdoing to provide fair notice as to what they are to defend.

The complaint's blizzard of purported violations under federal and California law is insufficient. The lender defendants correctly summarize that the complaint "is a hodgepodge of statutory quotations, formulaic recitations and vague assertions of misconduct." The complaint lacks cognizable claims or legal theories upon which to support the lender defendants' liability. The complaint lacks specific, clearly defined allegations to give fair notice of claims plainly and succinctly to warrant dismissal of this action.

### Failure To Tender Indebtedness

Mr. Estillore's failure to tender, and apparent inability to tender, the amount owing on his loans further dooms the complaint's global claims.

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.*, 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.*, 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

. . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no effect if the person making it is not able to perform. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing Cal. Civ. Code, § 1495). Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect. *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases). "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property." *United States Cold Storage v. Great Western Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985). "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender." *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117,

92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales."  *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988).   The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect."  *Gaffney*, 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Turning to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, et seq., the "voiding of a security interest may be judicially conditioned on debtor's tender of amount due under the loan." *American Mortgage Network, Inc. v. Shelton*, 486 F.3d 815, 821 (4th Cir. 2007).

15 U.S.C. § 1635(b) governs the return of money or property when a borrower has rescinded effectively:

> . . . Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

12 C.F.R. § 226.23(d) address rescission effects and provides:

> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, **the consumer shall tender the money or property to the creditor** or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.  (Bold added.)

Neither TILA nor its Regulation Z, 12 C.F.R. §§ 226, et seq., "'establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract.'" *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1172 (9th Cir. 2003) (quoting *Large v. Conseco Financing Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002)).  The Ninth Circuit Court of Appeals, relying on *Large*, explained:

Instead, the "natural reading" of the language of § 1635(b) "is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right of rescission is available, or because the appropriate decision maker has so determined. . . . Until such decision is made the [borrowers] have only advanced a claim seeking rescission."

*Yamamoto*, 329 F.3d at 1172 (quoting *Large*, 292 F.3d at 54-55)).

A rescission notice is not automatic "without regard to whether the law permits [borrower] to rescind on the grounds asserted."  *See Yamamoto*, 329 F.3d at 1172.  Entertaining rescission automatically "makes no sense . . . when the lender contests the ground upon which the borrower rescinds." *Yamamoto*, 329 F.3d at 1172.  "In these circumstances, it cannot be that the security interest vanishes immediately upon the giving of notice.  Otherwise, a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto*, 329 F.3d at 1172 (italics in original).

Moreover, although 15 U.S.C. § 1635(b) "provides for immediate voiding of the security interest and return of the money within twenty days of the notice of rescission, we believe this assumes that the notice of rescission was proper in the first place." *In re Groat*, 369 B.R. 413, 419 (Bankr. 8th Cir. 2007).  A "court may impose conditions on rescission that assure that the borrower meets her obligations once the creditor has performed its obligations." *Yamamoto*, 329 F.3d at 1173.  The Ninth Circuit has explained that prior to ordering rescission based on a lender's alleged TILA violations, a court may require borrowers to prove ability to repay loan proceeds:

1

2

3

4

5

6

> As rescission under § 1635(b) is an on-going process consisting of a number of steps, there is no reason why a court that may alter the sequence of procedures after deciding that rescission is warranted, may not do so before deciding that rescission is warranted when it finds that, assuming grounds for rescission exist, rescission still could not be enforced because the borrower cannot comply with the borrower's rescission obligations no matter what. Such a decision lies within the court's equitable discretion, taking into consideration all the circumstances including the nature of the violations and the borrower's ability to repay the proceeds. If, as was the case here, it is clear from the evidence that the borrower lacks capacity to pay back what she has received (less interest, finance charges, etc.), the court does not lack discretion to do before trial what it could do after.

7   *Yamamoto*, 329 F.3d at 1173 (affirming summary judgment for lender in absence of evidence that

8   borrowers could refinance or sell property); *see American Mortgage*, 486 F.3d at 821 ("Once the trial

9   judge in this case determined that the [plaintiffs] were unable to tender the loan proceeds, the remedy

10  of unconditional rescission was inappropriate."); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir.

11  1974) (under the facts, loan rescission should be conditioned on the borrower's tender of advanced funds

12  given the lender's non-egregious TILA violations and equities heavily favoring the lender).[2]

13  Neither the complaint nor record references Mr. Estillore's tender of indebtedness or meaningful

14  ability to do so.  The record's silence on Mr. Estillroe's tender of or ability to tender amounts

15  outstanding is construed as his concession of inability to do so.  Without Mr. Estillore's meaningful

16  tender, Mr. Estillore seeks empty remedies, not capable of being granted.  In addition, the complaint

17  does not address conditions precedent to permit rescission even under TILA.  The complaint is not a

18  timely, valid rescission notice. "Clearly it was not the intent of Congress to reduce the mortgage

19  company to an unsecured creditor or to simply permit the debtor to indefinitely extend the loan without

20  interest." *American Mortgage*, 486 F.3d at 820-821.  Without Mr. Estillore's meaningful tender, his

21  purported claims are doomed.

22  Despite the global defenses to defeat the complaint's claims, this Court turns to the lender

23

24  [2]   The Fourth Circuit Court of Appeals agrees with the Ninth Circuit that 15 U.S.C. § 1635(b) does not compel a creditor to remove a mortgage lien in the absence of the debtor's tender of loan proceeds:

25

26  > Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers.

27  *Powers v. Sims & Levin*, 542 F.2d 1216, 1221 (4th Cir. 1976).

28

1  defendants' particular challenges to the claims.

2  **TILA Claim**

3      The complaint's (fifth) claim alleges that "[d]efendants violated TILA by failing to provide

4  Plaintiff with accurate material disclosures required under TILA."   The claims further accuses

5  Countrywide of failure to provide "a correct payment schedule, a properly disclosed interest rate, an

6  accurate Good Faith Estimate or a disclosure relating to Property/Hazard Insurance."

7      The lender defendants fault the TILA claim as untimely.

8  ***Damages Limitations Period***

9      A TILA damages claim is subject to 15 U.S.C. § 1640(e), which provides that an action for a

10  TILA violation must proceed "within one year from the date of the occurrence of the violation."  "TILA

11  requires that any claim based on an alleged failure to make material disclosures be brought within one

12  year from the date of the occurrence of the violation."  *Hallas v. Ameriquest Mortg. Co.*, 406 F.Supp.2d

13  1176, 1183 (D. Or. 2005).  The limitations period runs from the date of a transaction's consummation

14  which is the time that a consumer becomes contractually obligated on a credit transaction.  *Monaco v.*

15  *Bear Stearns Residential Mortgage Corp.*, 554 F.Supp.2d 1034, 1039 (C.D. Cal. 2008).  The Ninth

16  Circuit noted in *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003):

17  
18  
19      > The failure to make the required disclosures occurred, if at all, at the time the loan
      > documents were signed.  The [plaintiffs] were in full possession of all information
      > relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day
      > the loan papers were signed.

20      Mr. Estillore consummated his loans on May 2, 2007 and filed his complaint on July 12, 2010,

21  more than three years after his loan transaction, to render a TILA damages claim time barred.

22  ***Rescission Limitations Period***

23      To the extent that the complaint pursues a TILA rescission claim, it too is time barred.

24      TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without

25  penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal*

26  *Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986);15 U.S.C. § 1635(a).  TILA rescission may be

27  extended up to three years if the lender fails to comply with TILA disclosure requirements.  *Semar*, 791

28  F.2d at 701-702; 15 U.S.C. § 1635(f).

15 U.S.C. § 1635(f) addresses the outer most limit to seek rescission:

An obligor's right of rescission **shall expire three years after the date of consummation of the transaction** or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . (Bold added.)

The U.S. Supreme Court has described as "manifest" Congress' intent to prohibit rescission after the three-year period has run:

Section 1635(f), however, takes us beyond any question whether it limits more than the time for bringing a suit, by governing the life of the underlying right as well. The subsection says nothing in terms of bringing an action but instead provides that the "right of rescission [under the Act] shall expire" at the end of the time period. It talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitation on the time for seeking a remedy superfluous. There is no reason, then, even to resort to the canons of construction that we use to resolve doubtful cases, such as the rule that the creation of a right in the same statute that provides a limitation is some evidence that the right was meant to be limited, not just the remedy. *See Midstate Horticultural Co., supra*, at 360, 64 S.Ct., at 130; *Burnett, supra*, at 427, n. 2, 85 S.Ct., at 1054 n. 2; *Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693-694, 48 L.Ed. 1067 (1904).

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417, 419, 118 S.Ct. 1408 (1998).

The complaint alleges, and matters subject to judicial notice reflect, that Mr. Estillore's loans were consummated on May 2, 2007 to render a TILA rescission remedy expired prior to the July 12, 2010 filing of the complaint.  TILA rescission is time barred.

### *Equitable Tolling*

Apparently recognizing that TILA claims are time barred, Mr. Estillore in his complaint appears to invoke equitable tolling.  The TILA claim alleges that TILA limitations periods "were tolled due to Defendants' failure to effectively provide the required disclosures and notices."

The lender defendants point to the complaint's lack of allegations of facts to excuse Mr. Estillore's earlier discovery of TILA violations with due diligence and to demonstrate concealment of material facts as to the loan agreements.

"Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  The Ninth Circuit Court of Appeals has explained:

Unlike equitable estoppel, equitable tolling does not depend on any wrongful conduct by

the defendant to prevent the plaintiff from suing. Instead it focuses on whether there was excusable delay by the plaintiff. If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing until the plaintiff can gather what information he needs. . . . However, equitable tolling does not postpone the statute of limitations until the existence of a claim is a virtual certainty.

*Santa Maria*, 202 F.3d at 1178 (citation omitted).

Courts are reluctant to invoke equitable tolling:

A statute of limitations is subject to the doctrine of equitable tolling; therefore, relief from strict construction of a statute of limitations is readily available in **extreme cases** and gives the court latitude in a case-by-case analysis. . . . The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings, when a claimant was tricked by an adversary into letting a deadline expire . . . Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights." . . .

*Scholar v. Pac. Bell*, 963 F.2d 264, 267-268 (9th Cir. 1992) (bold added; citations omitted).

To rely on the delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005) (quoting *McKelvey v. Boeing North American, Inc.,* 74 Cal.App.4th 151, 160, 86 Cal.Rptr.2d 645 (1999)). "[T]o adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." *Fox*, 35 Cal.4th at 809, 27 Cal.Rptr.2d 661.

The doctrine of delayed discovery requires a plaintiff to plead facts showing an excuse for late discovery of the facts underlying his cause of action. *Prudential Home Mortgage Co. v. Superior Court*, 66 Cal.App.4th 1236, 1247, 78 Cal.Rptr.2d 566 (1998). The plaintiff must show that it was not at fault for failing to discover or had no actual or presumptive knowledge of facts sufficient to put it on inquiry. *Prudential Home*, 66 Cal.App.4th at 1247, 78 Cal.Rptr.2d 566. As to sufficiency of delayed discovery allegations, plaintiff bears the burden to "show diligence" and "conclusory allegations' will not withstand dismissal. *Fox*, 35 Cal.4th 797, 808, 27 Cal.Rptr.2d 661.

1    The complaint broadly alleges that Mr. Estillore is entitled to tolling without supporting

2 specifics.  No allegation identifies specific withheld disclosures.  The complaint lacks allegations that

3 the lender defendants prevented Mr. Estillore to compare what documents he received to the TILA

4 disclosure requirements.  *See Hubbard v. Fidelity Federal Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (no

5 evidence suggested that lender concealed its alleged breach).  Nothing suggests that Mr. Estillore lacked

6 information relevant to discovery of a TILA violation when his loan was consummated.  The complaint

7 offers nothing to demonstrate that despite Mr. Estillore's due diligence, he was unable to obtain

8 information of a TILA violation.  The complaint is silent as to his purported due diligence.  The

9 complaint is conclusory as to alleged TILA violations and support for tolling. The complaint's

10 conclusory allegations are insufficient to invoke equitable tolling or delayed discovery and in turn to

11 defeat the limitations defense.  Mr. Estillore's TILA claim is time barred and subject to dismissal.

**Real Estate Settlement Procedures Act**

13    The complaint's sixth claim alleges that "[d]efendants" violated the Real Estate Settlement

14 Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., by not explaining to Mr. Estillore that he would

15 pay a Yield Spread Premium and by not providing him separate fee agreements regarding a Yield Spread

16 Premium.  The claim asserts a RESPA violation "because the payments to the mortgage broker and to

17 the lender were misleading and designed to create a windfall."

18    The lender defendants fault the RESPA claim as time barred and lacking a private right of action.

*Limitations Defense*

20    The lender defendants note that the RESPA claim appears to allege violations under either 12

21 U.S.C. § 2607(a) for prohibited referral payments of real estate settlement services, or 12 U.S.C. §

22 2607(b) for prohibited receipt of "any portion, split or percentage" of a settlement service fee, except

23 for performed services.  The lender defendants point to 12 U.S.C. § 2614's one-year limitations for

24 violations of 12 U.S.C. § 2607.  The "primary ill" which RESPA seeks to remedy is "the potential for

25 'unnecessarily high settlement charges' caused by kickbacks, fee-splitting, and other practices that

26 suppress price competition for settlement services.  This ill occurs, if at all, when the plaintiff pays for

27 the service, typically at the closing."  *Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359-360 (5th

28 Cir. 2003) (quoting 12 U.S.C. §2601(a)).  Mr. Estillore closed his loan well more than a year prior to

1  the complaint's July 12, 2010 filing to bar 12 U.S.C. §§ 2607 claims.

2  *No Private Right Of Action For Disclosure Violations*

3  The lender defendants note that Mr. Estillore lacks a private right of action for disclosure

4  violations alleged in the complaint in that RESPA creates a private right of action only "for violations

5  of specific, limited provisions."

6  RESPA's purpose is to "curb abusive settlement practices in the real estate industry.  Such

7  amorphous goals, however, do not translate into a legislative intent to create a private right of action."

8  *Bloom v. Martin*, 865 F.Supp. 1377, 1385 (N.D. Cal. 1994), *aff'd*, 77 F.3d 318 (1996).  "The structure

9  of RESPA's various statutory provisions indicates that Congress did not intend to create a private right

10  of action for disclosure violations under 12 U.S.C. § 2603 . . . Congress did not intend to provide a

11  private remedy . . ."  *Bloom*, 865 F.Supp. at 1384.

12  The absence of a private right of action for RESPA disclosure violations dooms a purported

13  RESPA claim based on disclosure violations.

14  **California Commercial Code Section 9313 And Note Possession**

15  The complaint's third claim proceeds pursuant to California Commercial Code section 9313

16  ("section 9313") to allege that "Deed of Trust is voidable in that there is no enforceable underlying

17  promissory note for the deed of trust to secure."  The claim faults that absence of delivery or "actual

18  possession of the original promissory note as required under California Commercial Code § 9313."

19  The lender defendants explain that section 9313 addresses perfection of secured transactions

20  under the Uniform Commercial Code and does not apply to real property deeds of trust.

21  The lender defendants correctly note that the Uniform Commercial Code does not govern non-

22  judicial foreclosures and that the complaint's note holder theory has been universally rejected.

23  Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

24  trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

25  in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of

26  trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment

27  of the loan."  *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).

28  A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid."  *Alliance*

16

*Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose. *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process. Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)). Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777. An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

1    A purported holder in due course challenge fails as a matter of law to further warrant dismissal

2    of a claim based on section 9313.  The record lacks facts of failure to comply with the statutory scheme

3    for non-judicial foreclosure.  A purported claim based on note delivery or possession fails, especially

4    in the absence of allegations of misconduct in the foreclosure proceedings.

5                                    **California Civil Code Section 2932.5**

6    The complaint's eleventh claim proceeds pursuant to California Civil Code section 2932.5

7    ("section 2932.5") to allege that "MERS has no legal standing to foreclose" in that "the Assignment

8    executed by the MERS employee is illegal."  The claim continues: "The actual owner of the note has

9    not executed the Assignment to the new party.  An assignment of a mortgage in the absences [sic] of the

10   assignment and physical delivery of the note will result in a nullity."

11   The lender defendants explain that section 2932.5 applies to mortgages, not deeds of trust which

12   secure Mr. Estillore's loans.

13   California adopted the "lien" theory of mortgages and the "title" theory in reference to deeds of

14   trust.  *Bank of Italy Nat. Trust & Sav. Ass'n v. Bentley*, 217 Cal. 644, 655, 20 P.2d 940 (1933).

15   Mortgages and deeds of trust "are fundamentally different in that in a mortgage only a 'lien' [is] created,

16   while in a deed of trust 'title' actually passe[s] to the trustee."  *Bentley*, 217 Cal. at 655, 20 P.2d 940.

17   A "deed of trust differs from a mortgage in that title passes to the trustee in case of a deed of trust, while,

18   in the case of a mortgage, the mortgagor retains title."  *Bentley*, 217 Cal. at 655, 20 P.2d 940.

19   A fellow district court has explained:

20   A deed of trust generally involves three parties, the borrower/trustor . . . who conveys the
     right to sell the property to the trustee, for the benefit of the lender/beneficiary. . . . The
21   practical effect is the creation of a lien on the subject property. . . . Notwithstanding that
     the right of sale is formally with the trustee, both the beneficiary and the trustee may
22   commence the non-judicial foreclosure process.

23   *Roque v. Suntrust Mortg., Inc.*, 2010 WL 546896, at *3 (N.D. Cal. 2010) (citation omitted).

24   Section 2932.5 addresses mortgages and provides:

25              Where a power to sell real property is given to a mortgagee, or other
     encumbrancer, in an instrument intended to secure the payment of money, the power is
26   part of the security and vests in any person who by assignment becomes entitled to
     payment of the money secured by the instrument. The power of sale may be exercised by
27   the assignee if the assignment is duly acknowledged and recorded.

28   The lender defendants are correct that section 2932.5 covers only to mortgages in which the

                                                    18

mortgagee has a power of sale.  "Section 2932.5 applies to mortgages, not deeds of trust. It applies only to mortgages that give a power of sale to the creditor, not to deeds of trust which grant a power of sale to the trustee." *Roque*, 2010 WL 546896, at *3.

The complaint's reliance on section 2932.5 is unavailing in that section 2932.5 does not apply to the facts subject to the complaint.  Moreover, California's non-judicial foreclosure statutes do not require a recording of assignments of interests in deeds of trust prior to foreclosure. *See Parcay v. Shea Mortgage*, U.S. Dist. Lexis 40377, at *31 (E.D. Cal. 2010) ("There is no requirement under California law for an assignment to be recorded in order for an assignee beneficiary to foreclose.")  A section 2932.5 claim is further subject to dismissal in the absence of allegations that foreclosure proceedings have started or been completed.  The complaint lacks a viable section 2935.5 claim.

### California Civil Code Sections 1916.7 And 1918.5-1921

The complaint appears to base its eighth, ninth and tenth claims on alleged violations of California Civil Code section 1916.7 ("section 1916.7") in that interest rates adjust more frequently than semi-annually, Mr. Estillore's loans are able to negatively amortize, and the loans include impermissible prepayment penalties.

The lender defendants point to the complaint's absence of facts that section 1916.7 applies and that "his loan was made pursuant to California and not federal law."

"[S]ection 1916.7 applies only to mortgage loans made pursuant to it. Cal. Civ. Code § 1916.7(b). Plaintiff has not alleged facts showing that section 1916.7 applied to her loan." *Santos v. U.S. Bank N.A.*, 716 F.Supp.2d 970, 980 (E.D. Cal. 2010) (citation omitted).

The lender defendants are correct that in the absence of allegations that section 1916.7 applies to Mr. Estillore's loans, the complaint's eighth, ninth and tenth claims based on section 1916.7 fail to warrant their dismissal.

The complaint's seventh claim appears to allege violation of California Civil Code sections 1918.5-1921 in that defendants failed "to determine the ability of the borrower to repay the loan" despite available documentation.

The lender defendants correctly fault the claim on grounds similar to demise of the section 1916.7 claims, that is, the absence of facts that the California Civil Code sections apply to Mr. Estillore's

1   loan.  Moreover, "no authority . . . supports a private right of action directly" under California Civil Code

2   section 1920.  *Nool v. HomeQ Servicing*, 653 F.Supp.2d 1047, 1055, n. 5 (E.D. Cal. 2009).

3        In addition, the California Civil Code section claims are susceptible to preemption under the

4   Alternative Mortgage Transactions Parity Act ("AMTPA"), 12 U.S.C. §§ 3801, et seq.  The lender

5   defendants explain that AMPTA applies in that Mr. Estillore sues about adjustable rate and balloon loans

6   which are alternative mortgage transactions under 12 U.S.C. § 3802(1) and Countrywide made the loans

7   as a "housing creditor" under AMTPA.

8        Federal preemption applies when federal legislation is "enacted pursuant to Congress'

9   constitutionally delegated authority . . . [to] nullify conflicting state or local actions."  *Worm v. American

10  Cyanamid Co.*, 970 F.2d 1301, 1304-1305 (4th Cir. 1992).  By enacting the AMPTA, "Congress clearly

11  intended to preempt state law to the extent it authorized non-federally chartered housing creditors to take

12  advantage of the federal regulations for alternative mortgage transactions that govern federally chartered

13  lending institutions."  *National Home Equity Mortgage Ass'n v. Face*, 239 F.3d 633, 637 (4th Cir. 2001).

14  The Office of Thrift Supervision ("OTS") and other agencies "have recognized the importance of

15  alternative mortgage transactions and have adopted regulations authorizing federally chartered

16  depository institutions to engage in alternative mortgage financing."  12 U.S.C. § 3801(a)(3).

17       A "non-federally chartered housing creditor may make an alternative mortgage transaction

18  pursuant to applicable federal regulations 'notwithstanding any State Constitution, law or regulation.'"

19  *Face*, 239 F.3d at 637 (quoting 12 U.S.C. § 3803(c)).  "Thus, to the extent that a non-federally chartered

20  housing creditor makes a loan in compliance with federal regulations for alternative mortgage

21  transactions, it may do so despite contrary state law."  *Face*, 239 F.3d at 637.

22       The lender defendants persuasively argue that federal regulations on disclosures for adjustable

23  rate mortgage loans preempt the conflicting provisions of California statutes.  The lender defendants are

24  also correct that the complaint lacks allegations that Mr. Estillore's loans originated under California

25  Civil Code sections which the complaint cites, especially given that the deeds of trust for his loans lack

26  indication of a prepayment penalty and the complaint fails to claim Mr. Estillore's ability to pay off the

27  entire loan to invoke a prepayment penalty.  Lastly, the complaint lacks facts that Countrywide failed

28  to provide required notifications and disclosures.

1    The complaint's California Civil Code section claims are doomed based on federal preemption
2    and the other grounds raised by the lender defendants.

3                                            **Fraud**

4    The complaint's (thirteenth) fraud claim alleges fraudulent loans because: "a) it was not clear
5    that borrower will be in negative amortization from the beginning; b) the teaser rate offered for the
6    beginning of the loan ONLY is illusory . . .; c) the payment schedule on the TIL does not identify the
7    kind of payment . . .; and d) underwriting a borrower based on a negative-amortization payment is
8    'knowingly' selling a mortgage loan that will fail."

9    The lender defendants challenge the fraud claim as time barred and lacking sufficient
10   particularity.

11                                  *Limitations Defense*

12   The lender defendants point to the three-year limitations of California Code of Civil Procedure
13   section 338(d) for an "action for relief on the ground of fraud."  The lender defendants note the
14   complaint's allegation that they "engaged in the acts with the purpose of deceiving Plaintiff and inducing
15   him to part with their [sic] personal and real property buy [sic] using a stated income loan."  As such,
16   the lender defendants contend that the fraud claim "materialized" no later than the May 2, 2007 closing
17   of Mr. Estillore's loan to render untimely his complaint filed on July 12, 2010.

18   The lender defendants are correct that alleged fraud accrued no later than the loans' closing to
19   render untimely a fraud claim.

20                                        *Elements*

21   The lender defendants challenge the fraud claim's lack of necessary particularity.

22   The elements of a California fraud claim are: (1) misrepresentation (false representation,
23   concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,
24   to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th
25   631, 638, 49 Cal.Rptr.2d 377 (1996).  The same elements comprise a cause of action for negligent
26   misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois,*
27   *Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

28   "[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and

                                            21

specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336. "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

### Particularity Pleading Standard

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[3] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[4] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have

---

[3]   F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[4]   "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity.")

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

The complaint's conclusory allegations fail to meet Rule 9(b)'s strict standard. The complaint lacks precise allegations as to what the lender defendants allegedly promised or represented. The complaint lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct. Mere allegations of "deceiving Plaintiff," "unlawful suppression of facts," and "selling a mortgage loan that will fail" are insufficient to warrant dismissal of the complaint's claims sounding in fraud.

### Implied Covenant Of Good Faith And Fair Dealing

The complaint's (fourth) breach of implied covenant of good faith and fair dealing claim alleges that "[d]efendants willfully . . . withheld numerous disclosures . . . withheld notices in regard to excessive fees and finance charges and . . . placed Plaintiff in a loan that he did not qualify for [and] could not afford."

The lender defendants fault the claim's failure to specify that "Countrywide performed any specific term of the contract in bad faith."

"There is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400, 97 Cal.Rptr.2d 151 (2000) (quoting *Comunale v. Traders & General Ins. Co.,* 50 Cal.2d 654, 658, 328 P.2d 198 (1958)). The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live, LLC v. City of Pasadena*, 114 Cal.App.4th 1089, 1093-1094, 8 Cal.Rptr.3d 233 (2004) (citation omitted).  The "scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.4th 342, 373, 6 Cal.Rptr.2d 467 (1992).  "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." *Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1120, 76 Cal.Rptr.3d 585 (2008).  "The covenant 'cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'"  *Agosta v. Astor*, 120 Cal.App.4th 596, 607, 15 Cal.Rptr.3d 565 (2004) (quoting *Guz v. Bechtel Nat. Inc.* 24 Cal.4th 317, 349-350, 100 Cal.Rptr.2d 352 (2000)).

The complaint fails to allege or identify a contract or contract provision to invoke an implied covenant to impose on the lender defendants liability for alleged wrongs.  The complaint lacks an alleged breach to invoke the implied covenant of good faith and fair dealing.  Mr. Estillore is unable to resort to an implied covenant to manufacture the lender defendants' obligations which do not exist.

/ / /

**Breach Of Fiduciary Duty**

The complaint's fifteenth claim alleges that "[d]efendants" breached a fiduciary duty "by ailing [sic] to advise or notify Plaintiff when Defendant's broker knew or should have known that Plaintiff will or has a likelihood of defaulting on the loan."

The lender defendants point to the absence of a fiduciary duty upon which to base a claim for Mr. Estillore.

"[T]o plead a cause of action for breach of fiduciary duty, there must be shown the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. The absence of any one of these elements is fatal to the cause of action." *Pierce v. Lyman*, 1 Cal.App.4th 1093, 1101, 3 Cal.Rptr.2d 236 (1991).

A fiduciary relationship arises "between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party." *Herbert v. Lankershim*, 9 Cal.2d 409, 483, 71 P.2d 220 (1937). A fiduciary relationship "ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent." *Herbert*, 9 Cal.2d at 483, 71 P.2d 220.

Nonetheless "no fiduciary relationship is established merely because 'the parties reposed trust and confidence in each other.'" *Girard v. Delta Towers Joint Venture*, 20 Cal.App.4th 1741, 1749, 26 Cal.Rptr.2d 102 (1993) (quoting *Worldvision Enterprises, Inc. v. American Broadcasting Companies, Inc.,* 142 Cal.App.3d 589, 595, 191 Cal.Rptr. 148 (1983)). To be charged with a fiduciary obligation, a person must knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law. *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal.4th 375, 385, 181 P.3d 142 (2008).

"California courts have not extended the 'special relationship' doctrine to include ordinary commercial contractual relationships" *Martin v. U-Haul Co. Of Fresno,* 204 Cal.App.3d 396, 412, 251 Cal.Rptr. 17 (1988) (citations omitted). "The relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d

1089, 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo Bank,* 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)).   A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America,* 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).

Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the borrower and lender." *Oaks Management Corp. v. Superior Court*, 145 Cal.App.4th 453, 466, 51 Cal.Rptr.3d 561 (2006) ("the bank is in no sense a true fiduciary"); *see Downey v. Humphreys,* 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such."). "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53.

The complaint alleges no facts to support a fiduciary relationship.  The complaint's mere reference to "fiduciary duty" is insufficient to impose a fiduciary relationship on the lender defendants. The breach of fiduciary duty claim fails.

### Unconscionability

The complaint's (sixteenth) unconscionability claim proceeds under a citation to Uniform Commercial Code section 2-3202 to allege that "based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards . . . the court may find that the loan agreement and trust deed are unconscionable and of no force or effect."

The lender defendants note that the complaint's citation to "Uniform Commercial Code § 2-3202" appears intended to apply to California Civil Code section 1670.5 ("section 1670.5"), which codifies Uniform Commercial Code § 2-302.  The lender defendants point out that section 1670.5 is "a common law defense to a breach of contract action, permitting a defendant to present evidence of a commercial setting, purpose and effect of a contract or clause to aid a court in making a determination." The lender defendants further explain that section 1670.5 does not create a private right of action.

Section 1670.5(a) provides:

If the court as a matter of law finds the contract or any clause of the contract to

have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

Unconscionability has "procedural" and "substantive" elements. *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486, 186 Cal.Rptr. 114 (1982). The procedural element focuses on: (1) "oppression," which "arises from an inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice'"; and (2) "surprise" which "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce*, 135 Cal.App.3d at 486, 186 Cal.Rptr. 114 (citations omitted). The substantive element turns on "allocation of risks between the parties, and therefore that a contractual term is substantively suspect if it reallocates the risks of the bargain in an objectively unreasonable or unexpected manner" to constitute a "one-sided" result without "justification" for it. *A & M Produce*, 135 Cal.App.3d at 487, 186 Cal.Rptr. 114 (citations omitted).

The lender defendants point to the complaint's absence of facts that they engaged in "oppression, surprise, or overly-harsh conduct" to suggest the availability of the unconscionability defense. The lender defendants are correct that they are not subject to an unconscionability claim to warrant dismissal of the claim.

**Rescission**

The complaint's (twelfth) rescission claim alleges that Mr. Estillore "is entitled to rescind the loan" based on TILA violations, RESPA, fraudulent concealment, and public policy grounds.

As addressed above, rescission, whether under statute or common law, is barred by limitations defenses and failure to tender amounts owed under Mr. Estillore's loans. To obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant." *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961). "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. "The

rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).

In the absence of Mr. Estillore's meaningful tender, rescission is an empty remedy which this Court may not convey on to Mr. Estillore to warrant dismissal of the rescission claim.

### Quiet Title

The complaint's (eighteenth) quiet title claim alleges that Mr. Estillore is "the owner and/or entitled to possession of the property" and that "Defendants is [sic] without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property." The complaint seeks this Court's declaration that the property's title "is vested" in Mr. Estillore.

The lender defendants attack the quiet title claim due to the complaint's failure to satisfy necessary elements and Mr. Estillore's failure to tender amounts due under his loans.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein." California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1.    A legal description and street address of the subject real property;

2.    The title of plaintiff as to which determination is sought and the basis of the title;

3.    The adverse claims to the title of the plaintiff against which a determination is sought;

4.    The date as of which the determination is sought; and

5.    A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030.

Mr. Estillore did not file a verified complaint. The complaint he filed lacks facts as to the title of which Mr. Estillore seeks determination and the basis of Mr. Estillore's purported title given his inability to tender amounts due on his loans. A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks facts that Mr. Estillore is a rightful owner of the property with

satisfaction of deed of trust obligations and thus lacks a properly pled quiet title claim.

As explained above, a purported quiet title claim is doomed in the absence of a tender of amounts owed.  "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934).  "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt.  The cloud upon his title persists until the debt is paid.").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen v. American Sav. & Loan Assn.,* 15 Cal.App.3d 112, 117,  92 Cal.Rptr. 851 (1971).  An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901).

Mr. Estillore is unable to re-acquire good title to the foreclosed property without paying or tendering the outstanding indebtedness.  With the complaint's absence of a meaningful ability or willingness to tender the indebtedness, a purported quiet title claim fails.  This Court is not in a position to award Mr. Estillore a windfall.

### Unfair Or Unlawful Businesses Practices

The complaint attempts to allege claims under the Unfair Competition Law ("UCL") of California Business and Professions Code, §§ 17200, et seq.  The complaint's fourteenth claim alleges "[d]efendants failed to undergo a diligent underwriting process" to consummate "an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiff of her [sic] home, equity, as well as her past and future investment."  The complaint's seventeenth claim alleges: "This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan."

1    The lender defendants fault the claims' failure to plead "the requisite statutory violation or act

2    of fraud" for a UCL claim.

3    "Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and

4    unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr.

5    718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).  The UCL establishes three varieties of unfair

6    competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group,*

7    *Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).  An "unlawful business activity" includes

8    anything that can properly be called a business practice and that at the same time is forbidden by law.

9    *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159

10   Cal.Rptr. 811, 602 P.2d 731 (1979)).  "A business practice is 'unlawful' if it is 'forbidden by law.'"

11   *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002)

12   (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

13   The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state,

14   or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832,

15   838, 33 Cal.Rptr.2d 548 (1999).  The UCL "thus creates an independent action when a business practice

16   violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.  According to the

17   California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful

18   practices independently actionable under the UCL.  *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th

19   377, 383, 6 Cal.Rptr.2d 487 (1992).

20   A fellow district court has explained the borrowing of a violation of law other than the UCL:

21   To state a claim for an "unlawful" business practice under the UCL, a plaintiff
     must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles*
22   *Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999)
     (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows'
23   violations of other law and treats them as unlawful practices that the unfair competition
     law makes independently actionable.") (citation omitted). Where a plaintiff cannot state
24   a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith*
     *v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d
25   399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her
     TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA
26   has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

27   *Rubio*, 572 F.Supp.2d at 1168.

28   "Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law,

30

or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548.

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived." *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673, at *5 (N.D. Cal. 2005).

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

The complaint is insufficient to establish that the lender defendants engaged in unlawful, unfair or fraudulent business practices under the UCL. In the absence of violation of a borrowed law, a UCL claim fails in that it cannot rest on alleged irregularities in the loan transaction or foreclosure proceedings. The complaint lacks viable claims under the federal and state statutes addressed above. The complaint points to no predicate violation of law. The complaint lacks reasonable particularity of facts to support a UCL claim. Reliance on invalid federal and state statutes and common law claims fails to support a viable UCL claim. The UCL claim lacks particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim, especially given failure of fraud and related claims, as discussed above. The complaint lacks facts to hint at a wrong subject to the UCL to warrant the UCL claims' dismissal.

**Declaratory Relief**

The complaint's first claim "seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property" in that "Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law."

The lender defendants contend that the declaratory relief claim fails as a remedy, not a cause of action, and is derivative of the complaint's other failed claims.

31

1    The complaint lacks a viable declaratory relief claim.  The Declaratory Judgment Act ("DJA"),

2    28 U.S.C. §§ 2201, 2202, provides in pertinent part:

3    In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal

4    relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final

5    judgment or decree and shall be reviewable as such.

6    28 U.S.C. §2201(a).

7    The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

8    300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

9    *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

10   "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

11   (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is

12   a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142,

13   143 (9th Cir. 1994).

14   As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

15   controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

16   the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

17   273, 61 S.Ct. 510, 512 (1941).  The United States Supreme Court has further explained:

18   A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . .  The

19   controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of

20   specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

21

22   *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

23   The failure of the complaint as a whole demonstrates the absence of an actual controversy subject

24   to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy, which

25   otherwise might only be tried in the future."  *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655

26   F.2d 938, 943 (9th Cir. 1981).  In the absence of a viable claim, the complaint fails to support declaratory

27   relief.

28   / / /

1

**Injunctive Relief**

2      The complaint's second claim appears to seek injunctive relief in that "[d]efendants have

3 commenced a foreclosure action" and "have scheduled a non-judicial sale."

4      The lender defendants attack the claim as seeking an unavailable remedy with the demise of the

5 complaint's other claims.

6      "Equity will not interpose its remedial power in the accomplishment of what seemingly would

7 be nothing but an idly and expensively futile act, nor will it purposely speculate in a field where there

8 has been no proof as to what beneficial purpose may be subserved through its intervention." *Karlsen*,

9 *v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). "Injunctive relief is

10 a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief

11 may be granted." *Shell Oil Co. v. Richter*, 52 Cal.App.2d 164, 168, 125 P.2d 930 (1942).

12      The complaint lacks facts to support injunctive relief, especially given the absence in the record

13 of foreclosure or other irregularities.  No viable claim supports injunctive relief to doom an injunctive

14 relief claim for Mr. Estillore.  In other words, injunctive relief fails with the complaint's claims.

15

**Attempt At Amendment And Malice**

16      Since the complaint's claims are barred as a matter of law, Mr. Estillore is unable to cure his

17 claims by allegation of other facts and thus is not granted an attempt to amend.

18      Moreover, this Court surmises that Mr. Estillore has brought this action in absence of good faith

19 and that Mr. Estillore seeks to exploit the court system solely for delay or to vex defendants.  The test

20 for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

21 applicant." *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

22 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

23 inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

24 good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

25 or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

26 Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

27

**CONCLUSION AND ORDER**

28      For the reasons discussed above, this Court:

1.   DISMISSES with prejudice this action against the lender defendants;

2.   DIRECTS the clerk to enter judgment against plaintiff Severino L. Estillore, Jr. and in favor of defendants Countrywide Bank FSB, ReconTrust Company, N.A., and Mortgage Electronic Registration Systems, Inc. in that there is no just reason to delay to enter such judgment given that Mr. Estillore's claims against the lender defendants and their alleged liability are clear and distinct from claims against and liability of any other defendant. *See* F.R.Civ.P. 54(b); and

3.   ORDERS Mr. Estillore, no later than February 11, 2011, to file papers to show cause why this Court should not dismiss this action against defendants First Mutual Mortgage, Inc. and Financial Title Co.

**This Court ADMONISHES Mr. Estillore that this Court will dismiss this action against defendants First Mutual Mortgage, Inc. and Financial Title Co. if Mr. Estillore fails to comply with this order and fails to file timely papers to show cause why this Court should not dismiss this action against defendant First Mutual Mortgage, Inc. and Financial Title Co.**

IT IS SO ORDERED.

**Dated:   February 2, 2011**            /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE